## Hains *vs.* Gardner & al.

One holding under a conveyance in fee, from the husband of the demandant in dower, is *estopped* from controverting the *seizin* of the husband.

This action, which was brought to recover the demandant's dower in certain real estate in *Hallowell,* was submitted upon the following agreed statement of facts ; or such of them as the Court should be of opinion were legally admissible.

The demandant was married to *Jonathan Hains, Sept.* 19, 1808, and remained his wife till he died, which was *May* 4, 1829. Her right to dower in all the lands described in her writ, except a lot of nine acres called the quarry lot, was not contested. In regard to this it was agreed, that, it was parcel of lot No. 1 — one undivided half part of which lot, including the nine acres was conveyed by *John Hains,* who was the owner of the whole lot, to *Jonathan Hains,* by deed dated *April* 30, 1806. The other undivided half of said lot was conveyed by *John Hains* to *Daniel Hains, May* 10, 1809 ; and by *Dan-*

*iel* to *Peter, Hains, October* 4, 1809 ; and by *Peter* to *Jonathan Hains, January* 30, 1810. On the 30th of *October,* 1807, *John* conveyed the nine acres by quit-claim to *Jonathan,* and the same day, *Jonathan* conveyed it to *Walter Powers,* who on the 21st of *July,* 1818, conveyed the same to *Dudley Hains.* After the decease of *Dudley, viz : May* 15, 1827, his heirs joined *Jonathan* in a submission by bond to three arbitrators, of his claim to the nine acres together with other matters, who awarded that, the heirs of *Dudley* should convey the said quarry lot to such person as *Jonathan* should appoint, on his paying to the heirs the sum of seven hundred dollars. In pursuance of this award, the said heirs conveyed the premises to *John Hains,* one of said heirs, who by appointment of *Jonathan, Dec.* 7, 1827, conveyed by release and quit-claim, the same nine acres, to *Levi Thing* and *Winslow Hawkes,* in equal and undivided moieties ; — and subsequently and before the commencement of this action, *Hawkes* conveyed his part of the nine acres to the other tenants. On the same day, *viz : Dec.* 7, 1827, *Jonathan Hains* also conveyed by deed of warranty the nine acres to *Thing* and *Hawkes.* The consideration paid by the latter was $2400 — seventeen hundred of which was paid to *Jonathan,* and seven hundred to *John Hains,* or the heirs of *Dudley.* The deeds were all duly registered.

The case was argued in writing, by *W. W. Fuller,* for the plaintiff, and by *J. Otis,* for the defendants.

*For the plaintiff,* it was insisted, that the defendants were *estopped* to deny the seizin of the plaintiff's husband, by their acceptance of his deed, and claiming and holding under him. And to this point was cited, *Nason v. Allen,* 6 *Greenl.* 243 ; *Kimball v. Kimball,* 2 *Greenl.* 226 ; *Bancroft v. White,* 1 *Caines' R.* 185 ; *Hitchcock v. Harrington,* 6 *Johns.* 290 ; *Collins v. Torrey,* 7 *Johns.* 278 ; *Hitchcock v. Carpenter,* 9 *Johns.* 344 ; *Bacon v. Hinman,* 10 *Johns.* 292 ; *Dolf v. Basset,* 15 *Johns.* ; *Fitch v. Baldwin,* 17 *Johns.* 161 ; *King v. Stacy,* 1 *T. R.* 1 ; *Trevivan v. Lawrence & al.* 1 *Salkeld,* 276 ; *Co. Litt.* 352, *a* ; 4 *Bac. Abr.* 107 ; *Com. Dig. Estop. E.* ; 5 *Dane's Abr.* 383 ; *Milliken v. Coombs,* 1 *Greenl.* 343.

Hains *v.* Gardner & al.

As to the favour with which the doctrine of estoppel is now regarded and the manner of applying it, he cited *Williams v. Gray,* 3 *Greenl.* 213; *Allen v. Sayward,* 5 *Greenl.* 227; *Somes v. Brewer,* 2 *Pick.* 197.

2. That, the plaintiff's husband was *in fact seised* during coverture. This is established by the submission to arbitration of all *Jonathan's claim* and *interest* in that lot, and the *award* thereon. This award establishes his interest to be seventeen parts out of twenty-four. It does not appear what evidence of his right was exhibited before the arbitrators, nor is it material to be known. Their award itself vested in him *an interest in the land,* subject to an incumbrance of $700, to the heirs of *Dudley Hains;* — it raised an *equity of redemption* in favour of *Jonathan,* on payment of that sum. This is the legal operation of the *bond of arbitration,* and the *award,* without any other act or conveyance from the parties. *Kyd on Award,* 62, *note; Morris v. Rosser,* 3 *East,* 15; 4 *Dallas,* 120; *Jones v. Boston Mill Corporation,* 6 *Pick.* 154; *Sellick v. Adams,* 15 *Johns.* 197; *Shepherd v. Ryers,* 15 *Johns.* 497; *White v. Dickinson,* 4 *Greenl.* 280.

It was also contended that, the bond of arbitration might be construed to be a covenant to *stand seised,* on the part of the heirs, to the *use* of *Jonathan,* in case the arbitrators should find him entitled to the land in question. And the *stat. of uses* (27 *Hen.* 8) transfers the *legal* estate to *cestui qui use.* It makes him " *complete owner* of the lands, as well at law as in equity." 2 *Black. Com.* 333. It is no objection that this bond was not founded on the consideration of blood or marriage. *Emery v. Chase,* 5 *Greenl.* 235; *Welsh v. Foster,* 12 *Mass.* 296; *Marshall v. Fiske,* 6 *Mass.* 24; *Pray v. Peirce,* 7 *Mass.* 381.

*For the defendants,* it was contended that, they held under *Walter Powers,* and not under *Jonathan Hains.* The latter had title in 1807 by conveyance from *John Hains,* but on the *same day* of the conveyance to him, he conveyed to *Walter Powers.* This was a year before the marriage of the demandant. And her husband has never had title to the premises since, consequently she has no legal claim to dower.

The bond of reference entered into between the heirs and *Jonathan* in 1827, was a mere *personal* obligation, and could create no title to, or lien upon the land. The arbitrators awarded that the heirs should convey to such person as *Jonathan* might appoint upon certain conditions being fulfilled — but in no event was it to be conveyed to him. — This created a mere personal obligation which might be enforced by a suit on the bond, on their refusal to convey, after a performance of the conditions — but could not operate by its own force to divest the title of the heirs. These personal obligations however, created by the bond and award, were terminated by the conveyance to *Hawkes.* and *Thing.* The heirs held the estate after the award as they did before, in their own right, and not as trustees or mortgagees. There was no interest in the land which in any event could result to *Jonathan Hains.* The paying a part of the purchase money to him was in accordance with the award under the submission, and was a discharge of the award and nothing more.

Nor could the entering into this arbitration by bond, be construed into a covenant to *stand seised to uses,* any more than could the giving of a note of hand. Nor could the award, whether it followed or did not follow the bond, create an equity of redemption. If A. pay to B. the price of a farm, to be conveyed to C. and it is conveyed to C. without any further reference to A. could this create an equity of redemption, or amount to a covenant to stand seised to uses? No more could *Jonathan Hains* acquire an interest or title in the land in question by the bond and award.

But it is a sufficient answer to this action to say, that there was *no seizin* in the husband during coverture, nor any *right* to such seizin. This is an indispensable requisite of dower. In *Co. Litt.* 153, *a,* it is said, "seizin imports the having possession " of an estate of freehold, or inheritance, in lands or tene- " ments." The case here finds no possession, no estate of freehold or inheritance. In *Stearns on Real Actions,* 51, 2d ed. we have a general rule by which to determine the wife's right to dower, so far as relates to the thing. "It must be such an " inheritance, that the issue which may be born during the mar- " riage, shall inherit as heirs." Would not the award of the

arbitrators in this case have gone to the administrators as a chattel, had it not been fulfilled? Again, the right to seizin must be a *present right*, depending on no contingency. *Stearns on Real Actions*, 2d ed. 182, 258, 285. The question being upon the seizin or want of it, in the husband, the burthen of proof is on the demandant; and if the case does not establish the former, it is not to be presumed.

But it is said, that, the defendants are *estopped* to deny the seizin of the husband. The doctrine contended for, is not that the husband's deed is some *evidence* of his having an interest in the land, but goes the length of excluding a *perfect title*, and establishing an entirely spurious one in its stead, and that too against the acts and protestations of those holding the estate.

This case differs from that of *Nason v. Allen*, inasmuch as there has been no claiming or holding by the present defendants under the husband's deed. Whereas in that case the tenant had *claimed* in a suit upon the mortgage, under the mortgagee, and still *held* his title under the mortgage. There is this same radical and essential difference betwixt this case, and all the other cases cited for the plaintiff. In the case at bar there was no title or interest conveyed by the husband, he having none to convey. The deed has answered the grantees no purpose whatever. It has had no operation or effect in their favour, and it should not be permitted to have any against them.

But further, it may be said that the present defendants are strangers to that deed, and it is said in *Co. Litt.* 352, *a.* that, " a stranger shall neither be bound by, nor take advantage of, " estoppel." A man is a stranger to a deed when he does not claim under it, though he may claim under the same grantor, for he may have a better title. *Co. Litt.* 265, *b*; 4 *Com. Dig.* 8; *Fairbanks v. Williamson*, 7 *Greenl.* 100; *Goodtitle v. Moore*, 3 *T. R.* 365.

Again, estoppel operates only by way of *admission*, and there is no case in which an admission operates to bind a stranger to the admission unless it affects the title. If the admission does not divest the title to the land, it does not operate in the hands of the grantor to him that made it. A judgment, a levy under execution, an admission by deed, under the hand and seal of

the person owning the estate prior to the conveyance, operate as an estoppel against him, and all who claim under him, having notice ; because these operate on the *estate,* and divest the title. But whatever is matter of admission, matter of evidence, however strong, unless it operate to divest the title does not operate as an estoppel against a stranger to the admissions. Admissions are evidence, and evidence must depend upon its application and operation for its effect ; but whatever depends on inference, argument or deduction, does not afford matter of *estoppel. Adams v. Moore,* 7 *Greenl.* 89. "It must be certain to every intent." *Co. Litt.* 353, *f.* In this case, the only effect of taking the deed, that could be legitimately deduced is, that *Hawkes* and *Thing* supposed the husband might have some interest in the land. If it be said that *Hawkes* and *Thing* cannot deny the taking of the deed, they may reply that nothing passed by the deed. *Wolcott & al. v. Knight & als.* 6 *Mass,* 418 ; *Williams v. Jackson,* 5 *Johns.* 489. So, though it be said, that a person shall not aver against a record, or deny his own deed, yet he may aver against the *operation* of the record, and against the *effect* of his own deed. 1 *Roll. Abr.* 862 ; *Hayne v. Maltby,* 3 *T. R.* 438. The true principle is, to judge of the *effect* and *operation* of the act ; and if it be inconsistent with any other inference, it may operate as an estoppel — but where a *paramount* title can be shown, there is no estoppel.

The reason of estoppels is said to be to avoid circuity of actions, and where there can be no circuity of actions there can be no estoppel. *Co. Litt.* 446, 4 ; *Dane's Abr. ch.* 124, *art.* 6 ; 14 *Johns.* 193. Here no circuity can be prevented. And if one cannot take a deed to secure himself against a pretended claim for fear of weakening by its defects his own title, it would operate to multiply law suits, rather than to prevent them. This subject is very properly commented on in the case of *Fox & al. v. Widgery,* 4 *Greenl.* 214. The mere taking a deed of precaution shall not prejudice the title. *Porter v. Hill.* 9 *Mass.* 34 ; *Blight's Lessee v. Rochester,* 7 *Wheat.* 547.

At the subsequent *June* term in this County, the opinion of the Court was delivered by

PARRIS J. — The plaintiff demands dower in certain real estate which formerly belonged to her husband, and her right is not contested except so far as relates to a lot of nine acres, called the quarry lot. Her claim to dower in this tract is resisted on the ground that the husband was not seised thereof, during coverture. But the plaintiff contends that the tenants are estopped to deny her husband's seizin, inasmuch as they hold under a conveyance from him, containing all the usual covenants of seizin and warranty.

This Court has repeatedly recognized the principle, that a person holding under a conveyance in fee from the husband of the demandant in dower, is estopped from controverting the seizin of the husband. If, therefore, the tenant in this case holds under a deed from the plaintiff's husband, executed subsequent to the marriage, all the facts in the agreed statement, tending to shew that the husband was not seised during coverture, are inadmissible as evidence, and can have no effect upon our decision.

The defendant's title is either from *John Hains,* by deed of release and quit-claim of the 7th of *December,* 1827, or from *Jonathan Hains,* the plaintiff's husband, by deed of warranty of the same date, or from both. The whole consideration paid for both deeds was twenty-four hundred dollars, seventeen hundred of which was paid to *Jonathan* as the consideration for his deed of warranty. This deed the tenants accepted and caused to be recorded. They have treated it as a valid conveyance, and it is not consistent with legal principles, or the whole tenor of their conduct in relation to this estate, for them now to repudiate it as inoperative.

The agreed statement does not shew who had the possession of the granted premises at the time of the conveyance, but it does shew who was understood to have the fee, the foundation and basis of the title. *Jonathan* must have understood it to have been in him, for he so covenanted. *Thing* and *Hawkes* must have so understood it, for they not only relied upon his covenants of seizin and warranty, but paid him largely therefor,

while they took from *John Hains*, under whom they would now pretend solely to claim, a mere release. Why they thus did it is not for us to inquire. What facts existed to render it expedient for them to take a release only from *John*, and a deed of warranty from *Jonathan*, the case does not disclose. They elected so to do, and it is not sufficient for them now, in order to avoid an incident which the law attaches to the land, to disclaim all title under the conveyance. They are the tenants in possession. The widow finds them holding under a deed from her husband executed during coverture, in which deed the husband claimed to be seised by covenanting that he was so, and there is nothing in the case tending to shew that he was not, at the time of the conveyance, in actual possession.

We cannot consider this case as bearing any resemblance to *Fox v. Widgery*. In that case the instrument relied upon as an estoppel was a naked release, given without consideration, treated as of little or no value, and under which no relations of subordination could arise between the parties. In the case at bar, we find no evidence of any omission or refusal on the part of the tenants or their grantors to hold under their deed from *Jonathan*, until the present claim of the demandant, and we think they cannot now be permitted to avoid the plaintiff's demand by repudiating an estate or a title which they have accepted, and through the public records have held forth to the world as valid. *Co. Litt.* 352, *a*.

The cases of *Kimball v. Kimball*, 2 *Greenl.* 226; *Nason v. Allen*, 6 *Greenl.* 243, and *Bancroft v. White*, 1 *Caines'*, 185, fully sustain this opinion. 4 *Bent's Comm.* 38. Those who take an estate under a defective conveyance are estopped from denying its validity. *Ripple v. Ripple*, 1 *Rawle*, 386.

From such of the facts in the agreed statement as are admissible evidence in the case, we think the plaintiff is legally entitled to dower in the nine acres. But we have no *evidence* that there is any mine or quarry on the premises, although it is assumed as a fact in the argument, and the case is wholly destitute of proof that the mine or quarry, if any there be, was opened or wrought during the coverture. If such was the fact, it is incumbent on the plaintiff to shew it.